GOLDENBERG, Respondent, v. DAANE and others, Appellants.*

WEBER, Respondent, v. SAME, Appellants.*

*February 9—March 7, 1961.*

* Motion for rehearing denied, with $25 costs, on May 2, 1961.

For the appellants there were briefs by *Schanen, Schanen & Pauly,* attorneys, and *Erwin N. Pauly* and *Walter J. Swietlik* of counsel, all of Port Washington, and oral argument by *Erwin N. Pauly.*

For the respondent there was a brief by *Goldenberg & McKay,* attorneys, and *Samuel Goldenberg* of counsel, all of Milwaukee, and oral argument by *Samuel Goldenberg* and *J. Curtis McKay.*

FAIRCHILD, J.   1. *Sufficiency of the form of the order.* "No order granting a new trial in the interest of justice shall be valid or effective, unless the reasons that prompted the court to make such order are set forth in detail therein." [1]

The order in this case does not set forth reasons, but does recite the filing of a written decision "wherein the court sets forth its reasons for its decision that the motions of the plaintiffs for new trial in the interest of justice must be granted."

"This court has held in *Alexander v. Meyers* (1952), 261 Wis. 384, 386, 52 N. W. (2d) 881, and *Guptill v. Roemer* (1955), 269 Wis. 12, 20a, 68 N. W. (2d) 579, 69 N. W. (2d) 571, that, if the reasons for granting a new trial in the interest of justice are set forth in detail by the trial court in a memorandum opinion, the order itself will comply with the statute if it incorporates by reference such reasons stated in the memorandum opinion." [2]

In the decision just quoted, we held the following reference insufficient:

"The court having rendered its written decision on motions after verdict directing that there be a new trial in the interest of justice, . . ."

---

[1] Sec. 270.49 (2), Stats.
[2] *Cary v. Klabunde* (1961), 12 Wis. (2d) 267, 270, 107 N. W. (2d) 142.

In the order now before us, there is specific reference to the reasons set forth in the decision, and we consider this form sufficient compliance with the statute.

2. *The issue.* The record makes it perfectly clear that Daane got onto the wrong side of the highway as a result of loss of control. It is almost as clear that this loss of control was precipitated by his striking the concrete divider with his left front wheel. There is testimony that the collision with the divider was, itself, the result of unexplained skidding. Defendant's counsel claims that the loss of control did not result from negligence, but resulted from the type of skidding, of which it has been said "that skidding may occur without fault, and that the mere fact of its occurrence will not support a finding or inference of negligence." [3]

There was testimony that road and weather conditions were consistent with such skidding, although the jury could consider that although the vehicle was short, it weighed four tons, and had dual rear wheels. Daane's description of events was somewhat ambiguous, and his testimony was to be interpreted by the jury. [4] He testified that the road was slippery, and that the tractor "started to skid, being short." Referring to the unidentified car preceding him, he said:

"This car was going north, and my tractor was sort of skidded and I tried to get away from him and by that I hit the curb as much as I know."

He said that the tractor skidded "maybe 10 feet" before the left front wheel hit the divider. It "sort of moved to the

[3] *Coenen v. Van Handel* (1955), 269 Wis. 6, 8, 68 N. W. (2d) 435; *Poole v. State Farm Mut. Automobile Ins. Co.* (1959), 7 Wis. (2d) 65, 95 N. W. (2d) 799.

[4] *Winston v. Weiner* (1958), 2 Wis. (2d) 584, 594, 87 N. W. (2d) 292; *Klabunde v. Emerling* (1959), 8 Wis. (2d) 472, 99 N. W. (2d) 736.

west." At another point he said: "Well, there was a car on the right side of me. At that time I noticed my truck started to skid, so I tried to get over and I hit the—I got over too far, I hit the abutment. That threw me into that skid."

He testified the divider was covered with snow and not visible, but that he knew it was there. On cross-examination, he testified as follows:

"*Q.* A few moments ago, Mr. Daane, you testified that as you were proceeding into this inside lane next to the divider that you got over too far. You made that testimony, did you not? *A.* Yes.

"*Q.* And having gotten over too far, it is a fact that your truck then lifted and went over the divider, isn't that right? *A.* It went into a skid at that time.

"*Q.* And with snow on the ground or on the highway, and striking this concrete object, your car then skidded, did it not? *A.* That's right."

He admitted that on adverse examination, he had given the following testimony:

"'*Q.* You couldn't go to the east because there was another car in that path, isn't that correct? *A.* That's right. I didn't want to go that way, you know.

"'*Q.* Because you were in fear of striking a car there, isn't that correct? *A.* Well, I mean when I hit the curbing I guess I couldn't really steer it no more; it slid and started to skid.' "

A traffic officer noticed skid marks in the snow, and described them as follows:

"The skid marks that I observed were from the inside lane of the northbound lane of travel. I believe that you describe it as the west lane on the east side of the concrete divider. The skid marks indicated that the vehicle had hit the concrete divider at one point and then come down onto the roadway, and right at that point there is a break in the concrete divider that we call a turnaround; it is a point

where vehicles may cross from one lane to the other or make U turns through. There were skid marks in there. Then the vehicle mounted the medial strip, the concrete divider, and continued on a diagonal crossing into the southbound lanes of travel, and it came to rest—well, the skid marks terminated at the—terminated in the east lane on the west side of the median strip."

The skid marks were approximately 50 feet, or a little more. The officer testified that he heard Goldenberg ask Daane if Daane had been passing a car, and Daane said "Yes."

We are of the opinion that the evidence presented a question for the jury as to whether Daane's loss of control was due to nonnegligent skidding, or was due to negligently striking the concrete divider while attempting to pass the unidentified car.

3. *The reasons assigned by the court.* The circuit court concluded that the evidence established Daane's negligence with respect to management and control as a matter of law, and that the only jury question was the question of cause. In our view, however, as indicated above, there was an issue of fact whether Daane was negligent. If a jury found him negligent, we would find it difficult to sustain a jury finding that such negligence did not cause the collision. It would have been a sufficient reason for ordering a new trial if the court had asserted that the finding of no negligence was against the great weight of the evidence.[5] While we find erroneous the circuit court's conclusion that there was negligence as a matter of law, we shall treat it as indicating that the circuit court considered the finding against the great weight of the evidence.

The court also gave as a reason the failure of the jury to allow the full amount of two medical bills. The court

[5] *McFarlin v. Hewitt* (1958), 5 Wis. (2d) 488, 493, 93 N. W. (2d) 445.

stated that in this respect, the jury did not follow the instructions, and had based answers upon conjecture. With respect to a bill paid by Mr. Weber, there was conflicting testimony as to the reasonableness of the charge for part of the services rendered, and the jury awarded $300 rather than $450, the amount of the bill. The jury awarded $132 for a bill paid by Mr. Goldenberg. The full amount was $172, and the only testimony was that the bill was reasonable. Ordinarily, an error of this character would have been corrected by the circuit court if the verdict had established liability, or disregarded where the verdict resulted in a finding of no liability as in this case. The fact that the circuit judge who had the advantage of seeing and hearing the proceedings mentioned this difference as a ground for ordering a new trial in the interest of justice, at least suggests that he considered there was an element of bias on the part of the jury. Defense counsel had emphasized the fact that the doctor who made these charges was Mr. Weber's cousin, and had referred to him several times, perhaps pointedly, as "Mr." rather than "Dr." In view of the wide discretion [6] vested in the trial judge to order a new trial in the interest of justice, we conclude that the order for a new trial was not an abuse of discretion, and should be affirmed.

4. *The court's instructions.* One further matter requires comment since there will be a new trial. The court considered that it should have instructed the jury that Daane had the burden of producing evidence which would overcome the inference of negligence arising from the fact that his vehicle was on the wrong side of the highway. Daane did have the burden of producing evidence sufficient to support a finding that his invasion of the west side of the highway was due to a nonnegligent cause. He did produce such evidence, and accordingly there would be no occasion to in-

[6] *Bolssen v. Heenan* (1958), 3 Wis. (2d) 110, 116, 88 N. W. (2d) 32.

struct the jury as to his burden to do so. The court gave proper instructions that the burden of proof was upon plaintiffs to establish Daane's negligence. If the jury considered, from all of the evidence, that negligence and lack of negligence were equally probable, the jury was required to find that there was no negligence. The burden which has sometimes been called the risk of nonpersuasion remained upon plaintiffs.[7]

The parties have not asserted any other error in the court's instructions, and none has come to our attention. We do note, however, that the court's instructions with reference to skidding and a driver's duty to exercise care commensurate with dangerous road conditions followed the court's discussion of question 2, the cause question.

The court had previously stated question 1, inquiring as to negligence, and defined negligence. The statements with respect to skidding and care required under dangerous road conditions ought logically to have been more closely associated with the instructions relating to negligence than with the instructions relating to cause.

*By the Court.*—Order affirmed.

---

[7] *Will of Faulks* (1945), 246 Wis. 319, 345, 17 N. W. (2d) 423; 9 Wigmore, Evidence (3d ed.), pp. 270–286, secs. 2485–2489.