CORNING and another, copartners d/b/a LONROC FLYING CLUB and another, Appellants, v. DEC AVIATION CORPORATION and another, Respondents.

*No. 94. Argued February 2, 1971.—Decided March 5, 1971.*
(Also reported in 184 N. W. 2d 152.)

For the appellants there was a brief and oral argument by *Frank M. Coyne* of Madison.

For the respondents there was a brief by *Schlotthauer, Johnson & Mohs,* and *Conrad H. Johnson,* all of Madison, and oral argument by *Conrad H. Johnson.*

ROBERT W. HANSEN, J. This is a case of a parked airplane being hit by a moving airplane that was being taxied and tested by an employee of an airplane repair service. As such, it is exactly analogous to the situation where a parked automobile is struck by a moving vehicle. The status of the pilot of the moving plane is identical with that of the driver of a moving automobile.

As to the element of negligence against the driver of the moving plane, in this situation, an inference of negligence is raised which is not dissipated until the driver presents evidence that his diverting to hit the parked plane was not negligent.[1] As where a motor vehicle crosses a center line or median strip and strikes a vehicle lawfully proceeding in a proper lane of traffic, the defendant driver has the burden of going forward with evidence to prove that his diversion was nonnegligent.[2] Where a mechanical failure is established as the cause of the diversion, that does not in itself establish freedom from negligence. Evidence indicating that the mechanical defect was not discoverable by reasonable inspection must be introduced to rebut the inference of negligence.[3]

In the case before us, a mechanical failure was established as the cause of the moving plane veering from its path and striking the parked plane. It is undisputed that a failure of the hyraulic system made it impossible

[1] *Bunkfeldt v. Country Mut. Ins. Co.* (1965), 29 Wis. 2d 179, 183, 138 N. W. 2d 271; *Goldenberg v. Daane* (1961), 13 Wis. 2d 98, 104, 108 N. W. 2d 187.

[2] *Voigt v. Voigt* (1964), 22 Wis. 2d 573, 584, 126 N. W. 2d 543.

[3] *Bunkfeldt v. Country Mut. Ins. Co., supra,* at pages 183, 184.

to steer or brake the moving plane. This, combined with the strong wind that was blowing, caused the collision. The failure of the hydraulic system came from an absence of fluid in it. Immediately after the accident, the hydraulic system was checked and found to be entirely without fluid. As stated in the trial court's opinion, ". . . the failure of the hydraulic system was blamed on this. . . ." Testimony, not controverted, established that the failure of the hydraulic system was due to and caused by the absence of fluid in it.

However, establishing the cause of the collision to be a mechanical failure does not establish nonnegligence. There remains the issue as to negligent inspection, whether under the circumstances the mechanical defect was discoverable by reasonable inspection. Such cause of action was added by motion made during the trial to conform the pleadings to the proof.

Such cause of action accepts, as it must, the fact that the collision was caused by a mechanical failure—the failure of the steering and braking mechanisms to work because of an absence of fluid in the hydraulic system of the plane. As the trial court said, ". . . the evidence offered did furnish a complete explanation of the occurrence, namely that there was insufficient hydraulic fluid in the system . . . ." The basis for recovery against the plane repair company is negligence on the part of the company in permitting the plane to be operated without fluid in its hydraulic system.

The defendant company relies upon oral evidence by its employees to establish that it was not negligent in the care, repair or maintenance of the plane entrusted to it. Its employees testified that the plane involved was inspected the day before the accident and was found to have a leaking hose in the hydraulic fluid system. Their testimony was that the faulty fluid hose was replaced, the fluid reservoir filled and the system tested by cycling the gear, all on the day before the accident.

An employee of defendant company testified that, just prior to the accident, he, at the request of the defendant driver, did a dipstick test and found the fluid reservoir full. The driver and another employee testified that there was no evidence of any leak or leakage anywhere about the plane at the time of the accident.

Plaintiff contends that an instruction should have been given to the jury on *res ipsa loquitur* since the plane, the instrumentality causing the collision, was within the exclusive control of the defendant company, and the event, the collision, was of the kind which does not ordinarily occur in the absence of negligence.[4] When applicable, the doctrine of *res ipsa loquitur* allows a permissible inference of negligence, from circumstantial evidence,[5] in effect, permitting a jury to reason from the effect to the cause, rather than from the cause to the effect.[6] Such instruction was requested and refused by the trial court which held it to be (1) superfluous, and (2) requiring expert evidence that the occurrence here ordinarily does not happen without negligence. In our view of the case, the absence of an instruction as to *res ipsa loquitur* is without impact upon the outcome, so the issue as to superfluity and necessity of expert testimony is not pursued.

We see rather a conflict between oral testimony and the physical facts. The undisputed physical facts include the manual pulling of the plane from the hangar in order to test it, including its hydraulic system, by taxiing it around the field. They include the presence of the wind to which the driver attempted to counteract

---

[4] *Turk v. H. C. Prange Co.* (1963), 18 Wis. 2d 547, 553, 119 N. W. 2d 365; *Welch v. Neisius* (1967), 35 Wis. 2d 682, 686, 151 N. W. 2d 735.

[5] *Knief v. Sargent* (1968), 40 Wis. 2d 4, 161 N. W. 2d 232; *Fehrman v. Smirl* (1963), 20 Wis. 2d 1, 21, 121 N. W. 2d 255, 122 N. W. 2d 439.

[6] *Knief v. Sargent, supra,* at page 6.

by steering the plane to the right to avoid hitting the parked planes. They include the immediate failure of the steering mechanism and braking mechanism due to an absence of fluid in the hydraulic system of the plane. They include the complete causation of the collision by the failure of the steering and braking mechanism due in turn to the absence of fluid in the hydraulic system.

To counter the otherwise inescapable inference that the plane started out without braking fluid, or lost its fluid in the few minutes and few feet of travel, the defendant company introduced oral testimony that (1) the fluid reservoir was full when the plane began its brief, but ill-fated, taxiing trip; and (2) there was no leak or leakage of fluid from the plane. Putting this testimony alongside the physical facts would give us a plane full of fluid, with no leak or leakage, being without fluid a few minutes later after having traveled but a short distance. Oral testimony would establish that, if the driver had occasion to steer or brake the plane when he started out, the mechanisms would have been in working order. Yet the physical facts compel the finding that, when he did attempt to steer and brake the plane, a few minutes and feet later, the absence of fluid made steering and braking impossible. What is wrong here is that accepting both oral testimony and undisputed physical facts leaves the accident, not only unexplained, but unexplainable. There is no way left, much less suggested, in which the fully fluid-laden plane could become so completely fluidless in so short a period of time and distance traversed. So there is a direct contradiction between the physical facts established and the oral testimony that an inspection was made and fluid found to be present minutes before the accident and that there was no leak or leakage anywhere about the plane.

This court has repeatedly held that, where physical facts are irrefutably established and permit of only one

inference, oral testimony in direct conflict with such established physical facts will not support a verdict of a jury.[7] Under the physical facts here established, the testimony of the employees that there was fluid in the hydraulic system and none leaked out at or before the time of the collision is not sufficient to sustain the jury verdict. Such testimony is incredible as a matter of law. It is rendered unbelievable by the physical facts which permit no inference that the plane set out with a leak-proof reservoir filled with fluid. The only reasonable inference, in fact, the only possible inference permitted by the physical facts, is that the lack of fluid and resultant collision would not have occurred but for the negligence of the defendant company in the repairing and maintenance of the hydraulic system.

At motions after verdict, the plaintiffs moved the trial court to change the answer to Question No. 1 from "No" to "Yes" and to answer Question No. 2 "Yes" and to then enter judgment in favor of plaintiffs for damages as allowed by the jury for the following reasons: "a. For the reason that the jury answer 'No' is contrary to all facts and the overwhelming weight of evidence in the case. b. For the reason that the jury finding of 'No' is contrary to law applicable." The trial court denied such motion. In our view of the case, since the parol testimony supporting a negative answer was in direct and irreconcilable conflict with the physical facts, such motion should have been granted. So reversal is required, and the case remanded with directions that Questions No. 1 and No. 2 of the jury verdict be answered "Yes," and judgment entered for the damages as found by the jury.

---

[7] *Whitefish Bay v. Hardtke* (1968), 40 Wis. 2d 150, 153, 161 N. W. 2d 259; *Nieman v. American Family Mut. Ins. Co.* (1968), 38 Wis. 2d 62, 67, 155 N. W. 2d 809.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment pursuant to the opinion.