SENTELL, Plaintiff-Appellant, v. HIGBY, and another, Defendants-Respondents.

Court of Appeals

*No. 77–789. Argued September 27, 1978.—*
*Decided November 22, 1978.*
(Also reported in 273 N.W.2d 780.)

For the appellant there were briefs by *Moen, Sheehan, Meyer & Henke, Ltd.* and oral argument by *L. E. Sheehan,* of La Crosse.

For the respondents there was a brief by *Robert D. Johns, Jr.,* and *Johns, Flaherty & Gillette, S.C.* and oral argument by *Robert D. Johns, Jr.,* of La Crosse.

Before Gartzke, P.J., Bablitch and Dykman, JJ.

BABLITCH, J. This is an appeal from a judgment of the circuit court for La Crosse county granting judgment in favor of the defendants and dismissing the plaintiff's complaint. The action was commenced by Candace Sentell to recover for injuries sustained as the

result of a collision occurring when the defendant Mark Higby's car struck the rear end of the parked car in which Sentell was a passenger. By special verdict, the jury found that Higby was not negligent in the operation of his automobile, and assessed Sentell's damages at $19,680.20. The trial court denied Sentell's alternative motions after verdict to change answers on the question of Higby's negligence or to order a new trial, and granted a motion for judgment on the verdict. Sentell seeks a new trial in the interest of justice, pursuant to sec. 752.35, Stats.[1]

The collision occurred shortly after 2 a.m. on June 4, 1974, on Fourth Street in the city of La Crosse. Fourth Street is a four lane, one-way, northbound street. The two center lanes are traffic lanes, and the two outer lanes are parking lanes. Sentell was one of three persons in the front seat of a car owned by Leo Klug, sitting partially on the right bucket seat and partially on the console. Klug was to her left in the driver's seat, and another passenger was on her right. Klug had parked the car in the west or left parking lane, with its motor running, to await the arrival of a friend in another car who would follow the Klug vehicle to a restaurant some distance away. The three expected their friend to approach along King Street, which intersects Fourth Street at right angles some 50 to 60 feet to the south of the

---

[1] Sec. 752.35, Stats., **Discretionary reversal.**

In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

Klug vehicle's location, and to turn left onto Fourth Street behind them. It was raining, and the pavement was wet.

Just prior to the collision, Klug was watching for the friend's approach in the rear view mirror, and Sentell was turned partially around to her left looking directly out the rear window. The Higby vehicle was proceeding north on Fourth Street in the east or right-hand traffic lane. Higby, Sentell, and Klug were the only eyewitnesses to the accident.

Klug testified that as he observed the Higby car approach, it swerved back and forth from one lane to another until it crashed into his car. Sentell testified that the first time she observed the car some distance away, it appeared to be changing from the right to left traffic lanes, and that when she turned back a moment later she saw it closer and swerving. Higby testified that just as he was approaching the intersection of Fourth and King Streets at a speed of about 20 miles per hour, a third car suddenly appeared on his right, turning right onto Fourth Street from King Street directly in front of him. He said he veered to the left to avoid it, fishtailed, lost control, and ultimately struck the rear of the Klug car. Both Klug and Sentell testified that they saw no other car than Higby's prior to the collision.

The impact of the collision pushed the Klug car forward 15 to 20 feet. The Higby car came to a stop an undetermined distance ahead of the Klug car. Sentell was thrown partially into the back seat, injuring her neck and shoulders. Doctors testified that she would have some degree of permanent pain as a result of her injuries.

Higby testified that he had been at a bar from 9:30 or 10 p.m. until closing time at 2 a.m., and had consumed "up to possibly ten beers." Sentell, Klug, and the friend who arrived at the scene moments after the collision all

testified that Higby's speech was slurred and that his walk was unsteady. Sentell testified that he appeared intoxicated.

Klug testified that the first thing Higby said after the accident was "Don't call the police, it's my fault. I've got insurance, I'll take care of it." Higby did not deny this. Police officers called to the scene testified that Higby did not tell them of any third car, nor give any explanation as to the cause of the accident.

The trial court, with no objection from Sentell, gave the "emergency instruction."[2] The only question submitted to the jury was whether at and immediately prior to the time of the accident the defendant was negligent in the operation of his vehicle. No separate question as to the existence of the alleged third car, nor of the comparative negligence of its driver, was presented though they had been requested by counsel for Higby and his insurance carrier.[3]

---

[2] Drivers of motor vehicles who are suddenly confronted by an emergency, not brought about or contributed to by their own negligence, and who are compelled to act instantly to avoid collision or injury, are not guilty of negligence if they make such choice of action or inaction as an ordinarily prudent person might make if placed in the same position, even though it should afterwards appear not to have been the best or safest course. You will bear in mind, however, that the rule just stated does not apply to any person whose negligence wholly or in part created the emergency. One is not entitled to the benefit of the emergency rule unless he is without fault in the creation of the emergency.

You will bear in mind that this instruction on the emergency rule is to be applied only in regard to the inquiry of negligence as to management and control. Wis. JI—Civil 1015.

[3] Higby requested the following instructions:

At and immediately prior to the accident of June 4, 1974 was the driver of an unidentified automobile who turned onto Fourth Street negligent in the operation of his automobile?

Was the negligence of the driver of the unidentified automobile a cause of the injuries of Candace Sentell sustained in the accident of June 4, 1974.

Sec. 752.35, Stats., governing this court's discretionary reversal powers, is identical to present sec. 751.06, and substantially identical to former sec. 251.09, both relating to the exercise of these powers by the supreme court. Under the construction of the latter statutes by the supreme court, which we accept as a binding construction of sec. 752.35, a new trial in the interest of justice should not be granted unless the reviewing court is convinced, on the record as a whole, that there has been a probable miscarriage of justice. *Rodenbeck v. American Mut. Liability Ins. Co.*, 52 Wis.2d 682, 686, 190 N.W.2d 917 (1971) ; *Puls v. St. Vincent Hospital,* 36 Wis.2d 679, 693, 154 N.W.2d 308 (1967) ; *Savina v. Wisconsin Gas Co.,* 36 Wis.2d 694, 704, 154 N.W.2d 237 (1967).

If a probable miscarriage of justice is apparent, however, this court may grant a new trial even where appropriate objections have not been made, sec. 752.35, Stats.; *LaTender v. State,* 77 Wis.2d 383, 393, 253 N.W. 2d 221 (1977) ; *Weggeman v. Seven-Up Bottling Co.,* 5 Wis.2d 503, 517, 93 N.W.2d 467 (1958) ; *Wells v. Dairyland Mut. Ins. Co.,* 274 Wis. 505, 518, 80 N.W.2d 380 (1957), and even though a new trial could not be granted on the grounds that the verdict is unsupported by any credible evidence or is contrary to the evidence. *Markey v. Hauck,* 73 Wis.2d 165, 171, 242 N.W.2d 914 (1976) ; *First Wisconsin Land Corp. v. Bechtel Corp.,* 70 Wis.2d 455, 462, 235 N.W.2d 288 (1975). The question for this court is whether the evidence and the law are such that the plaintiff "probably should have won and should therefore be given another chance." *Savina v. Wisconsin Gas Co.,* 36 Wis.2d at 704; *Lock v. State,* 31 Wis.2d 110, 118, 142 N.W.2d 183 (1966) ; *Dunlavy v. Dairyland Mut. Ins. Co.,* 21 Wis.2d 105, 119, 124 N.W.2d 73 (1963).

From the record as a whole, we are convinced that the verdict finding Higby free of negligence is against the great weight and clear preponderance of the evidence, and that the real issues in the case have not been fully tried. The fact that Higby's automobile collided with the rear end of a parked car, thus causing Sentell's injuries, is not in dispute. The only evidence that Higby was not negligent in the management and control of his vehicle is his own testimony that a third car, seen by him alone, ran a stop sign as he approached the intersection of King and Fourth Streets, and forced him to lose control and crash into the rear of the Klug vehicle, propelling it some 15 to 20 feet forward, despite the fact that he had been going only 20 miles per hour[4] before the appearance of the alleged third car and that he had braked thereafter.

But for Higby's testimony, the facts would warrant a finding by the trial court that he was negligent as a matter of law. *Corning v. Dec Aviation Corp.*, 50 Wis.2d 441, 444, 184 N.W.2d 152 (1971) ; *Bunkfeldt v. Country Mut. Ins. Co.*, 29 Wis.2d 179, 183, 138 N.W.2d 271 (1965) ; *Goldenberg v. Daane*, 13 Wis.2d 98, 104, 108 N.W.2d 187 (1961). Over against this testimony is the evidence that Higby had been drinking steadily for at least four hours; the testimony of three witnesses

---

[4] Sentell argues that this testimony is incredible. She cites the Wisconsin Manual for Motorists, published by the Department of Transportation, which indicates that the total stopping distance, including reaction time, for a vehicle travelling 20 miles per hour is 40 to 44 feet. She points out that if Higby had braked as soon as he saw the alleged third vehicle, just as he "approached" the intersection, he would have stopped well short of the Klug vehicle located 50 to 60 feet beyond. The computation of stopping distances in that manual, however, are based on an assumption of dry pavement and cannot, standing alone, support a conclusion by this court that Higby's version of the facts is entitled to no weight as a matter of law. *See Pappas v. Jack O. A. Nelsen Agency, Inc.*, 81 Wis.2d 363, 368, 260 N.W.2d 721 (1977).

that he moved and spoke as though intoxicated; the uncontroverted testimony of Klug that Higby admitted complete fault immediately after the accident and requested that the police not be called; Higby's failure to mention to anyone on the night of the accident—even in answering questions of investigating police officers— the existence of the alleged third car; and the testimony of both Sentell and Klug, who had been watching the intersection more or less constantly prior to the collision, that they saw no other vehicle on the road.

Before a party is entitled to the benefits of the emergency doctrine, his conduct must be free from negligence which contributed to the creation of the emergency. *Cords v. Anderson*, 80 Wis.2d 525, 546, 259 N.W.2d 672 (1977); *Kinsman v. Panek*, 40 Wis.2d 408, 415, 162 N.W.2d 27 (1968). Before the jury could properly have weighed the question whether defendant's actions contributed to the emergency, it must have first determined that an emergency in fact existed. Higby's claim that the alleged third car created the emergency, and thus freed him of liability to the plaintiff, is an affirmative defense, so designated by him in the pleadings, which he had the burden of proving. *Corning v. Dec Aviation Corp.*, 50 Wis.2d at 444; *Voigt v. Voigt*, 22 Wis.2d 573, 584, 126 N.W.2d 543 (1964). This claim was denied by Sentell and her witnesses, and was a material fact at issue.

In refusing Higby's request for separate verdict questions as to the existence of the third car and the negligence of its driver, the trial court apparently reasoned that there was insufficient evidence to warrant the same.[5] Sentell, who did not join the request, cannot now

[5] "THE COURT: I am fully aware of the fact that a party who is not in the lawsuit often must have their negligence determined, but here you have a ghost—and I don't feel you can take the

claim that this refusal constitutes reversible error. She argues however that the giving of the emergency instruction, coupled with the omission of separate questions as to the existence of the underlying emergency, may have had the effect of "reinforcing" Higby's uncorroborated claim and have led the jury to believe it was required to assume his assertions as true, thus preventing the real issues in the case from being fully tried. We find this argument persuasive.

While the form of a special verdict is a matter largely within the discretion of the trial court, sec. 805.12, Stats.;[6] *Schulz v. St. Mary's Hospital*, 81 Wis.2d 638, 654, 260 N.W.2d 783 (1978); *Liberty Tea Co. v. La Salle Fire Ins. Co.*, 206 Wis. 639, 643, 238 N.W. 399 (1932), and while ultimate fact verdicts are generally appropriate and sufficient in negligence cases, *Milwaukee Auto. M.I. Co. v. Nat. F.U.P. & C. Co.*, 23 Wis.2d

ghost car and say 'they are a party to it.' We have a dispute in the testimony as to whether there was one. His testimony is affirmative testimony and the other testimony is negative. The owner of the car didn't observe another car, stationwagon, or any other vehicle and although he admits his attention was primarily directed to a different sector of the street—no, I just don't feel that under those circumstances, Mr. Johns, that I can submit any question in regard to the ghost car."

The trial court may have rejected the offered instructions, quoted at n. 3, for the reason they assume the existence of the "ghost car." Such reasoning would find support in *Huffman v. Reinke*, 268 Wis. 489, 67 N.W.2d 871 (1955) and *Maas v. W. R. Arthur & Co.*, 239 Wis. 581, 2 N.W.2d 238 (1942).

[6] Sec. 805.12, Stats., **Special verdicts.**

"(1) USE. Unless it orders otherwise, the court shall direct the jury to return a special verdict. The verdict shall be prepared by the court in the form of written questions relating only to material issues of ultimate fact and admitting a direct answer. The jury shall answer in writing. In cases founded upon negligence, the court need not submit separately any particular respect in which the party was allegedly negligent. The court may also direct the jury to find upon particular questions of fact."

662, 666, 128 N.W.2d 12 (1964); Decker and Decker, *Special Verdict Formulation in Wisconsin,* 60 Marq. L. Rev. 201 (1977), the peculiar circumstances of a case may require the submission of separate questions as to specific facts. Hence, in *Schroeder v. Watertown,* 161 Wis. 13, 19, 152 N.W. 470 (1915), the supreme court found error in the trial court's failure to submit a specific question of disputed fact which "constituted a distinct and separate defense" in the pleadings and "one that was sharply litigated on the trial." In *Aetna Cas. & Sur. Co. v. Osborne-McM. E. Co.,* 26 Wis.2d 292, 305, 132 N.W.2d 510 (1965), the court held that "[w]here there is a conflict in the evidence and inconsistent theories on the cause of the event are advanced, we believe instructions encompassing both theories should be given." And in *Schulz v. St. Mary's Hospital,* 81 Wis.2d at 654, 260 N.W.2d at 788, the court said:

> While it is not recommended "in mine-run personal injury actions that the jury be interrogated as to whether certain particular injuries of plaintiff were caused by the accident," our court has held that where, as in the case before us, ". . . plaintiff's damages resulting from an accident would be minimal unless a particularly serious mental or physical condition was also caused by the accident in question, and there is sharp conflict in the testimony as to whether such serious condition was caused by the accident, then a question [inquiring as to an additional fact] . . . is proper and often advisable." Such special fact questions have been termed "useful tools." (Footnotes omitted.)

The reasoning of the *Schulz* case is applicable here. The defendant's freedom from negligence and liability depended on the existence of a disputed fact upon which there was "sharp conflict in the testimony." While it may not be necessary to submit a separate jury question on the existence of the emergency in the "mine-run"

personal injury case involving the assertion of an emergency defense,[7] we believe that the peculiar circumstances of this case render such a specific question "proper and advisable."

We do not hold that the defendant's testimony was inherently incredible, though it does, we think, border on the unbelievable. Nor do we hold that the trial court committed any clear error which entitles this defendant as a matter of right to a new trial. It is apparent from the record that the court below was most scrupulous in addressing the motions after verdict, and that it gave great weight, as it should have done, to the jury's finding on the ultimate issue. Nonetheless, it is our conviction from the record as a whole that justice has miscarried for this plaintiff, that a different result is probable on retrial, and that a retrial should include specific jury questions and findings as to the existence of the claimed emergency.

Since no claim is made by either party that the damages assessed by the jury were inappropriate, the trial

---

[7] See, e.g., Wanerski v. State Farm Mut. Auto. Ins. Co., 23 Wis.2d 368, 127 N.W.2d 264 (1964); Misiewicz v. Waters, 23 Wis.2d 512, 127 N.W.2d 776 (1964); and Papacosta v. Papacosta, 2 Wis.2d 175, 85 N.W.2d 790 (1957), all involving situations where one of the parties to the action invaded the other party's lane of travel; McCrossen v. Nekoosa Edwards Paper Co., 59 Wis.2d 245, 208 N.W.2d 148 (1973), involving leakage of poisonous gases after mechanical failure of defendant's equipment; Tombal v. Farmers Insurance Exchange, 62 Wis.2d 64, 214 N.W.2d 291 (1974), involving defendant's failure to yield right-of-way to plaintiff.

Though the supreme court has held in one case that "A jury's determination that . . . an emergency occurred is but an intermediate step in determining whether the actor was negligent," Hardware Mut. C. Co. v. Harry Crow & Son, Inc., 6 Wis.2d 396, 405, 94 N.W.2d 577 (1959), and found no basis in that case for submission of a separate question on the intermediate step, the underlying facts constituting the claimed emergency were not in substantial dispute, as they are here. We find no other case on point.

on remand should be limited to issues of negligence. *Fouse v. Persons,* 80 Wis.2d 390, 400–401, 259 N.W.2d 92 (1977).

In reaching our conclusion, we have not considered the affidavit of Sentell's counsel as to the expressions of certain individual jurors after the verdict, nor the arguments presented on appeal in relation thereto. Though it is submitted that these comments were not an attempt to impeach the jury's verdict, but only an aid to the court in perceiving the incredibility of the verdict, the law is clear that such "aids" to understanding are improper and impermissible. *Boller v. Cofrances,* 42 Wis.2d 170, 177, 166 N.W.2d 129 (1969).

*By the Court.*—Judgment reversed and remanded.