T & HW ENTERPRISES, Plaintiff-Respondent,

v.

KENOSHA ASSOCIATES, an Illinois limited partnership, Defendant-Appellant.

Court of Appeals

*No. 95–1838. Oral argument September 18, 1996.—Decided November 27, 1996.*

(Also reported in 557 N.W.2d 480.)

On behalf of the defendant-appellant, there were briefs by *Howard B. Schoenfeld* of *Steiner & Schoenfeld* of Milwaukee and *Matthew S. Vignali* of *The Law Offices of Bruno M. Rizzo, S.C.* of Kenosha. There were oral arguments by *Howard B. Schoenfeld*.

On behalf of the plaintiff-respondent, there was a brief by *Cletus R. Willems and Charles R. Shedlak* of *O'Connor & Willems, S.C.* of Kenosha. There were oral arguments by *Cletus R. Willems*.

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J. Kenosha Associates (Associates) appeals from a judgment finding that it breached a lease agreement with T & HW Enterprises (T & HW). First, Associates argues that the trial court erred when it permitted Associates' counsel to withdraw one month prior to trial and then subsequently denied a motion for adjournment brought by Associates' replacement counsel. Associates also claims that the evidence was insufficient to support the jury's award of $488,322 for damages for loss of bargain and was too speculative to support an award of $544,802.32 for lost profits. Finally, Associates raises three issues with regard to jury instructions and the special verdict and requests a new trial because "the real controversy has not been fully tried." *See* § 752.35, STATS.

We affirm the trial court's exercise of discretion when it permitted Associates' counsel to withdraw and

subsequently denied an adjournment. We conclude that the claimed errors with regard to the jury instructions and the special verdict are without foundation. We affirm that portion of the judgment awarding damages for loss of bargain; however, we reverse the award of damages for lost profits as being too speculative under the facts here presented.

### Statement of Facts

In 1989, Charles Thomas Wood became interested in opening a "Family Fun Center," which he conceptualized as an indoor recreational/entertainment center. The center would include miniature golf, video games and food service and would attract individuals of all ages. Wood incorporated T & HW to facilitate the formation of the new venture and worked with Gino Villani, an accountant with whom he had dealt in the past, to determine the economic feasibility of the proposed operation. After searching for a site for the business, Wood signed a lease with Associates for approximately 50,000 square feet of space. The lease agreement was for ten years, with an option to renew for an additional ten-year term.

After signing the lease agreement, but before T & HW was able to occupy the space, Associates sent T & HW a letter ending the agreement.[1] T & HW filed an

---

[1] The lease agreement was signed in January 1990. Associates was responsible for providing adequate heat, ventilation, air conditioning, washroom facilities, existing lighting in good working order, demolition to provide clear space and adequate electricity. Wood testified that it was his understanding that this could be completed in thirty days. T & HW's rent would begin ninety days thereafter, unless it was able to open sooner than that. However, in mid-1990, it was discovered that there was no water to the building and that because of the distance

action in circuit court in February 1993 seeking damages for the alleged breach. The case was originally set for trial on February 14, 1994; the trial date was later moved to July 25, 1994, by stipulation of the parties. Subsequent to that adjournment, Associates' counsel, S. Michael Wilk, was elected circuit court judge. At Wilk's request, the July 25, 1994, trial date was adjourned. The trial was then set for March 27, 1995.

Before leaving private practice and with Associates' approval, Wilk transferred the case to Phillip Godin. Four weeks before the March 27, 1995, trial date, Godin brought a motion to withdraw. In support of the motion, Godin stated that Associates had not paid him "for quite some time"; that the payment issue had been discussed and Associates had been sent monthly reminders; and that Associates had been told as much as a month prior to the hearing that if it was not able to advance some money, Godin would seek to withdraw. In response to an inquiry by the court, Godin also stated that he had informed Associates of the motion to withdraw. No one from Associates attended that hearing. The court then extended the deadline for discovery and noted that it would not grant a motion to adjourn, but granted Godin's motion to withdraw.

Two weeks before the pending trial, Associates retained the services of Ronald Diersen. Diersen then brought a motion to adjourn. Due to its calendar, the trial court was unable to hear the motion until March

---

involved providing water would be expensive. While Wood moved forward with his own renovations to the space, Associates did not make the required improvements. In April 1992, Wood received a termination agreement from Associates. He refused to sign it, but a few months later Associates hired a contractor to tear out the interior work that T & HW had installed.

27, the first day of the scheduled trial. Diersen presented two affidavits in support of the requested adjournment—his own and that of Ann Saywitz,[2] an attorney who served as local (Chicago area) counsel for Associates. Diersen's affidavit outlined when he had been retained and stated that based on his review of the file, the defense case was not ready for trial. In her affidavit, Saywitz referenced the prior withdrawal by Godin. She stated that when she received Godin's request for a retainer of $10,000, she informed him that he "would have to deal directly with the defendant regarding the request for a retainer." Saywitz also stated that she was informed of Godin's motion to withdraw the night before the hearing on the motion, but prior to that she was unaware that he was considering withdrawing from the case.

After hearing arguments for both sides, the court noted that the case was filed in 1993, that it was now March 1995, and that the case had not moved forward. The court noted that there had been two adjournments already and that there had been adequate time for discovery. Furthermore, in commenting on Associates' failure to appear at the withdrawal hearing, the court reasoned, "It did not appear that the defendants were overly concerned at that point in regard to this matter." Concluding that "this matter could have been and should have been ready for trial" and that there was no adequate reason shown for an adjournment, the court denied the motion.

After finding that Associates had breached its lease agreement with T & HW, the jury awarded dam-

---

[2] Ann Saywitz is the sister of Mitchell Saywitz, who acted as an agent for Associates in this matter.

ages for loss of bargain and lost profits in the total amount of $1,033,124.32.[3] Associates now appeals.

*Denial of Withdrawal and Adjournment*

Associates first contends that the trial court misused its discretion when it permitted Godin to withdraw and then denied Associates' request for an adjournment. A determination on a motion to withdraw or a decision to grant a continuance lies within the discretion of the trial court. *See Dressler v. Circuit Court for Racine County,* 163 Wis. 2d 622, 632, 472 N.W.2d 532, 536 (Ct. App. 1991); *see also Page v. American Family Mut. Ins. Co.,* 42 Wis. 2d 671, 677, 168 N.W.2d 65, 68 (1969). A discretionary act will be sustained if the trial court examined the relevant facts, applied a proper standard of law and reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414-15, 320 N.W.2d 175, 184 (1982).

At the hearing on the motion to withdraw, the court was apprised of the following: Godin had not been paid; Godin had contacted Associates and monthly billing reminders had been sent; and Associates had been asked to advance some money and was told that Godin would seek to withdraw as counsel if an advance was not forthcoming. The court then questioned Godin as to whether Associates had been given notice of the motion to withdraw. Godin answered affirmatively, stating that he had mailed the motion to Associates and that

---

[3] The total award was apportioned as follows: $488,322 for loss of bargain damages and $544,802.32 for lost profits. T & HW was also awarded $5000 for "loss or destruction of property" as a result of the breached lease agreement. That award was not appealed.

he had spoken to Associates about it. Notably, no one from Associates was at the hearing.

■

Acting on the information that it had before it, we conclude that the trial court's decision to grant Godin's motion to withdraw was a proper exercise of its discretion. The court stated that it would give Associates an additional two weeks to file answers to interrogatories and a "reasonable time to obtain new counsel." The court also stated for the record, "At this time as I indicated I will not adjourn the trial date. . . . [I]f they continue to request an adjournment of a trial, they will have to have their new attorney do it."

At the adjournment hearing, Diersen argued that the defense case was not ready for trial. He presented two affidavits—his own and the affidavit of Saywitz. In her affidavit, Saywitz admitted that she knew about the withdrawal hearing, but she "was unable to change [her] schedule to attend said hearing." Saywitz cited personal illness as a reason for the delay in retaining another attorney.

In contrast to the information presented by Associates, the trial court reviewed the procedural background of the lawsuit: the case had been pending for more than two years; it had been adjourned twice before; the second adjournment had been at the request of Associates' counsel; and Associates had been put on notice by the court's order of March 7, 1995, that the court would not adjourn the trial at that time. In addition, the court had independently reviewed the case file, had seen portions of discovery, and had noted that "until Mr. Godin withdrew things had been progressing. Everyone had been filing what was requested of them pursuant to scheduling order." The court then

concluded that "[t]here is no adequate reason shown for an adjournment."

Our independent review of the record and the information the trial court had before it convinces us that the trial court properly exercised its discretion in denying the "eleventh hour" motion for adjournment. The trial court reviewed the file, Associates' two affidavits and heard both parties argue the motion. We also note that *Charolais Breeding Ranches, Ltd. v. Wiegel,* 92 Wis. 2d 498, 514-15, 285 N.W.2d 720, 728 (1979), provides authority for the proposition that regardless of an attorney's alleged shortcomings, an individual cannot fail to properly attend to his or her affairs. Associates is a large management and leasing company. It retains the services of local counsel, an attorney who is also a family member.[4] Even Diersen acknowledged that he recognized the court's "interest in keeping [its] calendar moving." The trial court's decision to deny the adjournment was a proper exercise of its discretion.

### Loss of Bargain Damages

Associates next argues that the trial court erred when it denied its motion to change the jury's damages award of $488,322 for loss of bargain to "zero" because T & HW "failed to present any credible evidence to support the award." In reviewing a jury's award of damages, this court must first determine if the record

---

[4]Wood testified that in one conversation with Mitchell Saywitz, after Wood informed Saywitz that Associates was leaving itself open to a lawsuit, Saywitz responded, "We have attorneys on retainer. We are paying them whether they do anything or not. If you think you've got the money that you can fight us, then do what you think you go [sic] to do."

601

supports the elements of the damages claim. *Coryell v. Conn,* 88 Wis. 2d 310, 315, 276 N.W.2d 723, 726 (1979). If so, the proper test to be applied in determining whether the jury's award should be sustained is "whether there is any credible evidence to support the jury's answer." *Gorton v. American Cyanamid Co.,* 194 Wis. 2d 203, 226, 533 N.W.2d 746, 756 (1995), *cert. denied,* 116 S. Ct. 753 (1996). Furthermore, when the jury verdict has the approval of the trial court, the scope of review is even more limited. *Id.*

The proper measure for loss of bargain damages is found in *Sporleder v. Gonis,* 68 Wis. 2d 554, 229 N.W.2d 602 (1975). Damages must be certain "both in their nature and in respect to the cause from which they proceed." *Id.* at 560, 229 N.W.2d at 605 (quoted source omitted). The rule of damages for loss of bargain is "the amount of rent the plaintiff would be compelled to pay for another store equally well adapted to his business." *Id.*

In this case, T & HW's expert, Lawrence Kilduff, presented extensive testimony regarding the fair market value of the disputed space. He did this by comparing the lease agreement that T & HW had with Associates to the lease agreements that Associates had drawn up with two tenants who subsequently occupied the same space. Kilduff also conducted a survey of rent of other property in the Kenosha area and concluded that the leases of the existing tenants in the disputed space were at fair market value and so could be used for an analysis. He also determined that there was no other comparable rental space available in Kenosha County at the relevant times.[5] He then testified that T

---

[5] Kilduff testified that "[t]he only available spaces of that size, we're talking about 50,000 [square] feet here, would have

& HW's damages for loss of bargain could be computed by taking the difference between the fair market value of the disputed space and the amount T & HW would have paid under the breached lease agreement.

Associates contends that this evidence "was insufficient as a matter of law to sustain the damages awarded by the jury for plaintiff's loss of the 'benefit of its bargain.' " Associates cites *Sporleder* in support of this contention. While we agree with Associates that *Sporleder* is the definitive case on this issue, we disagree that under the language of *Sporleder* the jury's award of loss of bargain damages was an error of law.

In *Sporleder,* the supreme court concluded that a plaintiff's proof, showing that the sought-after rental space had appreciated approximately ten percent since the signing of the lease and that this increase was evidence of his loss of bargain damages, was insufficient. *Id.* The court there suggested that the plaintiff needed to show the rent he would be compelled to pay "for another store equally well adapted to his business." *Id.*

There is a significant evidentiary difference between *Sporleder* and the instant case. While the plaintiff's proof in *Sporleder* was confined to a showing that the rent on the subject property had increased, *id.,* T & HW retained the services of an expert. Kilduff testified extensively regarding his determination of T & HW's damages for loss of bargain. Although he was unable to locate a comparable rental space in Kenosha County, he did determine that the current lease agreements for the disputed space were at fair market value.

---

been vacated food stores and that sort of thing. . . . I think the rent would have been substantially higher, perhaps a number of dollars per foot higher."

Furthermore, Kilduff testified that T & HW's requirements for its business venture were unique in both size and location. He testified extensively as to how he determined that the subsequent lease agreements represented the fair market value of the disputed space. The jury found Kilduff's testimony to be credible and awarded damages accordingly. We affirm the jury's award for the loss of bargain damages.

### Lost Profits Damages

Associates next argues that the evidence presented to support the jury's award of $544,802.32 in lost profits was "speculative, conjectural, and insufficient as a matter of law to support the award." Once again, *Sporleder* is instructive. Whether facts fulfill a particular legal standard is a question of law subject to de novo review. *"K" Care, Inc. v. Town of Lac du Flambeau*, 181 Wis. 2d 59, 65, 510 N.W.2d 697, 699 (Ct. App. 1993).

The fundamental basis for recovery from a breach of a commercial lease is "just compensation for losses necessarily flowing from the breach." *Sporleder*, 68 Wis. 2d at 559, 229 N.W.2d at 605 (quoted source omitted). Any damages awarded must be certain, both in their nature and in respect to the cause from which they proceed. *Id.* at 560, 229 N.W.2d at 605. A party whose contract has been breached cannot be placed in a better position because of the breach than he or she would have been had the contract been performed. *Id.* at 559, 229 N.W.2d at 605.

In *Sporleder*, the plaintiff supported his lost profits claim by producing his income tax returns from the

previous two years. *Id.* at 560, 229 N.W.2d at 605. There was no evidence what his income would have been in the new location. *See id.* The court found that "when a business intended to move to a new location, but did not, the possible profits in that location would be too conjectural to permit recovery." *Id.*

T & HW supported its claim for lost profits by using profit projections produced by Villani. The projections were for a twenty-year period, although Villani admitted that no business of Wood's had ever lasted twenty years. Villani also stated that the projections were for a location in Waukegan, Illinois, not Kenosha, but opined that the projections were equally reliable for either location. On cross-examination, Villani admitted that he was "not familiar on how large an area that this Family Fun Center could draw from." ██

After conducting an independent review of the evidence presented, we conclude that the evidence offered by T & HW to support its claim of lost profits was too speculative to support the jury's award. The Family Fun Center was a new and untried business venture for Wood. The concept was unproven and any projections as to profit were purely conjectural. We therefore reverse the jury's award for lost profits.[6]

---

[6] As was the case in *Sporleder*, we conclude that the evidence of lost profits concerning a new business *in this case* is inadequate. We do not, however, intend to foreclose consideration of such damages being recoverable where a claimant can present credible comparable evidence or business history and business experience sufficient to allow a fact finder to reasonably ascertain future lost profits. The issue of lost profits damages should be addressed on a case-by-case basis.

### Jury Instructions and the Special Verdict

Associates also raises three issues regarding jury instructions and the special verdict. They will be considered seriatim.

Associates contends that the trial court erred when it refused to give a requested instruction on "general damages." Trial courts have wide discretion in determining which jury instructions will be given as long as they fully and fairly inform the jury of the applicable principles of law. *D.L. v. Huebner,* 110 Wis. 2d 581, 624, 329 N.W.2d 890, 909 (1983). The trial court gave instructions on incidental damages, future profits and loss of expectation damages. Associates requested an additional instruction framed in the language of *Sporleder,* which it claimed was necessary to demonstrate a general mitigation requirement on the part of a plaintiff "that there wasn't [sic] other available premises equally well suited for his intended use."

On appeal, Associates seeks to argue that the failure to give the requested instructions meant that the jury was denied necessary information on how to calculate the loss of bargain damages. Associates maintains that "the General Damages' instruction requested by Associates was specifically designed to accomplish that purpose."

Our review of the record shows that Associates failed to lodge an objection to the trial court's denial of the requested instruction. Failure to object at the instruction conference waives any error in the proposed instructions. Section 805.13(3), STATS.; *see also State v. Schumacher,* 144 Wis. 2d 388, 409, 424 N.W.2d 672, 680 (1988). Furthermore, we note that even if we were to consider the merits of Associates' claim, our

analysis upholding the jury's award of damages based on the fair market value of the subject property is also determinative of this issue on appeal.

Associates next raises two issues with respect to the special verdict. It first claims that the trial court erred when it refused to include a separate question concerning mutual abandonment of the lease. The form of a special verdict is a matter largely within the discretion of the trial court. *Sentell v. Higby,* 87 Wis. 2d 44, 53, 273 N.W.2d 780, 784 (Ct. App. 1978). A reviewing court has found error when a trial court failed to submit a specific question of disputed fact which constituted a "distinct and separate defense" and which was "sharply litigated on the trial." *See id.* at 54, 273 N.W.2d at 785 (quoted source omitted).

The trial court determined that the issue of abandonment was encompassed in the question of whether there was a breach of the lease agreement. As the trial court reasoned, the proposed verdict (without including a separate question on mutual abandonment) provided all of the answers necessary to reach a verdict "without getting into [the jurors'] specific thoughts in regard to each issue." The court, however, agreed to give a jury instruction on abandonment, which placed the legal theory in front of the jury. We conclude that the court acted within its discretion in declining to include the question as part of the special verdict.

Associates also claims that the following question, "What is the difference between the contract price-what the plaintiff T & HW Enterprises had agreed to pay under the lease-and the fair rental market value of the leased premises?" resulted in the jury making a determination of loss of bargain damages on a false

607

premise. Associates bases its contention on its belief that under *Sporleder*, "If plaintiff paid no rent elsewhere, then its damages were zero." Associates' reliance on *Sporleder* as support for the foregoing conclusion is misplaced. As our analysis of the loss of bargain issue should make clear, we read the following statement, "[T]he actual rental value would *ordinarily* be measured by the amount of rent the plaintiff would be compelled to pay for another store equally well adapted to his business," as describing the *usual* means of determining these damages. *See Sporleder*, 68 Wis. 2d at 560, 229 N.W.2d at 605 (emphasis added) (quoted source omitted).

We can find no requirement in that language that the party claiming damages must in fact lease another space. In a situation, such as here, where the original bargain struck may be one which cannot be duplicated, evidence that the disputed lease space was subsequently leased for a higher rate may be accepted as evidence of damages. The issue of loss of bargain damages is fact specific, but in a case such as this where expert testimony is unrefuted that comparable space was not available at any relevant time, there is credible evidence to support the jury's finding that the comparison fairly represents T & HW's loss of bargain damages.

As a final contention, Associates asks this court to reverse the judgment of the trial court because the real controversy has not been fully tried. *See* § 752.35, STATS. The basis for this request is Associates' belief that the testimony of Kilduff on the loss of bargain and Villani on the lost profits "was inadmissible as a matter of law." Based on our prior analysis of these issues—our conclusion that the jury properly considered credible evidence with regard to the issue of the

loss of bargain, and our reversal of the award of lost profits—there is no basis for this final consideration.

In sum, we affirm the trial court on the pretrial issues concerning the withdrawal of Associates' counsel and the denial of the adjournment motion. We affirm the trial court's rulings with regard to the jury instructions and the special verdict questions. We also affirm that portion of the judgment which awarded damages in the amount of $488,322 for loss of bargain. We reverse the award of damages for lost profits, however, concluding that the evidence presented was too speculative and conjectural.

*By the Court.*—Judgment affirmed in part and reversed in part.