Patricia MROZEK and Plover Motel, Inc.,
Plaintiffs-Appellants-Petitioners,

v.

INTRA FINANCIAL CORPORATION and James Graves,
Defendants,

MALLERY & ZIMMERMAN, S.C.,
Defendant-Respondent.

Supreme Court

*No. 2002AP2448. Oral argument March 1, 2005.*
*—Decided June 9, 2005.*

2005 WI 73

(Also reported in 699 N.W.2d 54.)

449

452

For the plaintiffs-appellants-petitioners there were briefs by *Elizabeth R. Olson, William P. Skemp* and *William Skemp Law Firm, S.C.,* LaCrosse, and oral argument by *William P. Skemp.*

For the defendant-respondent there was a brief by *Ross A. Anderson, Barbara J. Janaszek* and *Whyte Hirschboeck Dudek S.C.,* Milwaukee, and oral argument by *Ross A. Anderson.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. Patricia Mrozek and Plover Motel, Inc. (PMI) seek review of a court of appeals decision affirming the circuit court's[1] grant of summary judgment to Mallery & Zimmerman, S.C. (Mallery) dismissing Mrozek's and PMI's claims for the negligent provision of legal services. We conclude that the circuit court correctly granted summary judgment dismissing the claim of PMI for lost profits, as well as Mrozek's claim for lost management fees that was dependent on PMI's claim for lost profits. However, we conclude that it was error to dismiss Mrozek's and PMI's other claims. Accordingly, we affirm in part, reverse in part and remand to the circuit court for further proceedings on Mrozek's and PMI's remaining claims based on the allegedly negligent provision of legal services.

## I. BACKGROUND[2]

¶ 2. Mrozek wanted to build a motel in Plover, Wisconsin and obtain an AmericInn franchise for it.

---

[1] The circuit court of Portage County, Frederic W. Fleishauer, Judge, initially decided the motion for summary judgment.

[2] The facts set out below are taken largely from the complaint and from Mrozek's affidavit submitted in opposition to

She retained Mallery in June of 1992 to provide legal advice in forming a corporation that would construct and operate the motel, in financing the hotel construction and in negotiating with AmericInn Motel for a franchise.

¶ 3. Mallery drafted the articles of incorporation for PMI, which was incorporated August 25, 1992. Mrozek estimated the cost of constructing the motel at approximately $2.8 million. She hoped to finance the project in part through a private stock offering, the offering memorandum for which she asked Mallery to draft, and in part through an institutional loan.

¶ 4. Between August 1992 and February 1993, Mrozek obtained investment loans totaling more than $500,000 from approximately 20 individuals. Mrozek represented to these investors that the loans would be used for the construction of the motel, which would ultimately generate a 10% return on their investments. When each loan was made, the investor received a note promising PMI would repay the principal of the loan, plus interest, within a specified time.

¶ 5. Mrozek alleges that Mallery knew of these initial notes, but that Mallery did not inform her that her solicitation of these private investment loans violated Wisconsin laws. Instead, Mrozek says that Mallery agreed to draft replacement notes for the private investors, which notes were to be secured by mortgages on the motel property that Mallery would record with the Portage County Register of Deeds. Apparently, Mallery did draft replacement notes and mortgages, but

Mallery's motion for summary judgment. They are taken as true only for purposes of reviewing the summary judgment decision before us. *See Prah v. Maretti*, 108 Wis. 2d 223, 228–29, 321 N.W.2d 182 (1982).

Mrozek alleges that Mallery did not timely record the mortgages, causing the mortgages to become worthless as security for the investors' loans.

¶ 6. On September 25, 1992, PMI purchased approximately three acres of property on which the motel was to be constructed. Mallery negotiated with Intra Financial Corporation (IFC)[3] to construct the motel for PMI, and assisted at the execution of the construction contract on October 10, 1992.

¶ 7. Also as part of the services Mallery provided to Mrozek and to PMI, Mallery drafted a private placement memorandum to sell securities in PMI. This private placement memorandum was filed with the Wisconsin Commissioner of Securities on February 5, 1993. According to Mrozek, the memorandum was not accurately drafted, causing the Commissioner of Securities to initially reject it. Additionally, after the memorandum was amended, she was unable to locate any purchasers who could meet the Commissioner's "investor suitability standards" that restricted who could invest in PMI based on the potential investor's net worth and income. In late 1993, the Commissioner revoked all sales of PMI stock.

¶ 8. On February 19, 1993 when PMI's costs depleted the initial $500,000 raised and it became delinquent in payments to IFC, IFC sent a Notice of Intent to file a construction lien against the motel property, and on April 29, 1993, it filed a construction lien. IFC then initiated a lawsuit to collect unpaid bills and to foreclose its lien.

---

[3] Both IFC and James Graves, an individual associated with IFC, were originally named as defendants in this action, but were dismissed as parties. The claims against IFC and Graves are not at issue here.

¶ 9. In late 1993, Mallery withdrew from representing Mrozek and PMI. However, prior to Mallery's withdrawal, Mrozek was charged with thirteen counts of willfully failing to disclose material facts under Wis. Stat. § 551.41(2) (2001–02),[4] in connection with PMI's sale of notes for the motel project. Mrozek obtained other counsel, and pursuant to a plea agreement, pled guilty to two counts of felony securities fraud under § 551.41(2) and to three counts of misdemeanor theft by fraud, under Wis. Stat. § 943.20(1)(d).[5] The court placed her on probation for the misdemeanor theft convictions, with jail time and restitution as conditions. Judgment on the felonies was withheld pursuant to a deferral agreement between Mrozek and the State.

¶ 10. In 1994, because of a lack of funds to pay outstanding construction bills and complete the motel's construction, PMI filed a voluntary Chapter 11 bankruptcy. The bankruptcy filing stayed a pending sheriff's sale of the motel property that had been ordered in

---

[4] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted. Wisconsin Stat. § 551.41(2) makes it unlawful in connection with the offer, sale, or purchase of securities, "to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." The criminal complaint alleged that Mrozek violated § 551.41(2) by failing to inform each investor that: (1) the Commissioner had revoked her securities license; (2) IFC had filed a Notice of Intent to file a lien against PMI; and (3) PMI had not secured financing for construction of the motel from any source other than the individual investors.

[5] Wisconsin Stat. § 943.20(1)(d) makes it unlawful to "obtain[] title to property of another person by intentionally deceiving the person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made."

IFC's lien foreclosure action. Schedules that PMI filed with its bankruptcy petition listed a claim against Mallery for the negligent delivery of legal services as an asset of PMI, and also identified Mallery as an unsecured creditor of PMI for unpaid legal bills. However, Mallery never filed a proof of claim in the bankruptcy action. Pursuant to a stipulation, the motel property and AmericInn franchise rights were transferred to IFC, who in turn transferred them to another corporation that operated the motel thereafter.

¶ 11. IFC then moved to convert the bankruptcy from a Chapter 11 reorganization to a Chapter 7 liquidation, asserting that "because [PMI] no longer owns the Property, [PMI] has no assets of substance, no business, no income, cannot generate funds to pay various expenses, and is completely unable to effectuate a [reorganization] plan," as required under Chapter 11. The bankruptcy court granted the motion over PMI's objection. The court appointed a trustee for the bankruptcy estate who would, in the words of the bankruptcy judge, "review the situation and determine . . . whether there were any assets which should be pursued." The trustee chose not to pursue the scheduled claim against Mallery, but did unsuccessfully pursue a claim against IFC for "disgorgement" of excess profits. The trustee then reported to the court that, after "diligent inquiry," there were "no assets in the estate" that were not either "inconsequential in value or burdensome to the estate." The trustee's report also recited that it constituted an "abandonment of all scheduled property of the bankruptcy estate." The bankruptcy court discharged all remaining debts against PMI and closed the estate.

¶ 12. Mrozek and PMI thereafter commenced this action against Mallery, alleging in an amended com-

plaint that the firm was negligent in its legal representation of both Mrozek and PMI and that Mallery also breached fiduciary duties it owed to them.[6] The circuit court granted summary judgment to Mallery on Mrozek's claim, concluding that her guilty plea precluded her malpractice claim against Mallery for any damages arising out of her criminal conviction. The circuit court also granted summary judgment dismissing PMI's negligence claim against the law firm after concluding that the doctrine of claim preclusion prevented PMI from re-litigating a claim that could have been raised and resolved as a part of the bankruptcy proceedings. Finally, the circuit court concluded that neither Mrozek nor PMI had made sufficient evidentiary submissions to support claims for damages based on future lost profits. Mrozek and PMI appealed.

¶ 13. The court of appeals affirmed the dismissal of all claims, but on slightly different grounds. It first concluded that Mrozek's guilty pleas and subsequent criminal convictions resulted in issue preclusion of "any issues of fact or law necessarily encompassed" by Mrozek's criminal convictions, even though neither of the parties argued issue preclusion in the circuit court, the circuit court did not address issue preclusion and neither party argued issue preclusion on appeal. Second, it concluded that PMI's claims were barred by claim preclusion, holding that because any such claim was not proceeded upon by PMI's bankruptcy trustee, it

---

[6] Mrozek and PMI refer on appeal only to their malpractice claims against Mallery. They do not argue that their claims, based on alleged breaches of the firm's fiduciary duties, should survive summary judgment, even if their professional negligence claims do not. Accordingly, we refer in this opinion only to the claims against the law firm as alleging professional negligence.

was lost. Third, the court of appeals affirmed the circuit court's dismissal of Mrozek's and PMI's claims for lost profits, agreeing that they had provided insufficient proof to go forward.

## II. DISCUSSION

### A. Standard of Review

¶ 14. We review a circuit court's decision granting summary judgment independently, but we apply the same methodology as the circuit court. *Smaxwell v. Bayard,* 2004 WI 101, ¶ 12, 274 Wis. 2d 278, 682 N.W.2d 923. Pursuant to Wis. Stat. § 802.08(2), summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Therefore, "[s]ummary judgment should not be granted, 'unless the facts presented conclusively show that the plaintiff's action has no merit and cannot be maintained.' " *Smaxwell,* 274 Wis. 2d 278, ¶ 12 (quoting *Goelz v. City of Milwaukee,* 10 Wis. 2d 491, 495, 103 N.W.2d 551 (1960)). In determining whether summary judgment was appropriately granted, "[w]e view the summary judgment materials in the light most favorable to the nonmoving party." *Id.* "In reviewing a circuit court's grant of summary judgment, this court will reverse the [circuit court] only if the circuit court incorrectly decided a legal issue or if material facts are in dispute." *Martin v. Milwaukee Mut. Ins. Co.,* 146 Wis. 2d 759, 766, 433 N.W.2d 1 (1988).

¶ 15. Whether issue preclusion is a potential limit on litigation in an individual case is a question of law, on which we give no deference to the circuit court's decision. *Heggy v. Grutzner,* 156 Wis. 2d 186, 192–93, 456 N.W.2d 845 (Ct. App. 1990). However, whether the circuit court properly applied, or refused to apply, issue preclusion in an individual case is a discretionary decision. *Paige K.B. v. Steven G.B.,* 226 Wis. 2d 210, 219–23, 594 N.W.2d 370 (1999). Additionally, whether claim preclusion was correctly applied by the circuit court is a question of law that we review de novo. *Lindas v. Cady,* 183 Wis. 2d 547, 552, 515 N.W.2d 458 (1994).

## B. Mrozek's Claims

¶ 16. Mallery argues that Mrozek's guilty pleas and subsequent criminal convictions preclude her from proving that the firm's alleged negligence caused her to violate the law, which resulted in her prosecution, conviction and damages. Mallery agrees with the court of appeals decision that issue preclusion bars Mrozek's claims and that judicial estoppel also precludes her claims.

### 1. Issue preclusion

¶ 17. Issue preclusion addresses the effect of a prior judgment on the ability to re-litigate an identical issue of law or fact in a subsequent action. *Northern States Power Co. v. Bugher,* 189 Wis. 2d 541, 550–51, 525 N.W.2d 723 (1995). In order for issue preclusion to be a potential limit on subsequent litigation, the question of fact or law that is sought to be precluded actually

must have been litigated in a previous action and be necessary to the judgment. *Town of Delafield v. Winkelman,* 2004 WI 17, ¶ 34, 269 Wis. 2d 109, 675 N.W.2d 470; *Michelle T. v. Crozier,* 173 Wis. 2d 681, 687, 495 N.W.2d 327 (1993). If the issue actually has been litigated and is necessary to the judgment, the circuit court must then conduct a fairness analysis to determine whether it is fundamentally fair to employ issue preclusion given the circumstances of the particular case at hand. *Paige K.B.,* 226 Wis. 2d at 220-21. For this analysis, the circuit court considers any of the following factors that are relevant to its decision: (1) whether the party against whom preclusion is sought could have obtained review of the judgment; (2) whether the question is one of law that involves two distinct claims or intervening contextual shifts in the law; (3) whether there are apt to be significant differences in the quality or extensiveness of the two proceedings such that relitigation of the issue is warranted; (4) whether the burden of persuasion has shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and (5) whether matters of public policy or individual circumstances would render the application of issue preclusion fundamentally unfair, including whether the party against whom preclusion is sought had an inadequate opportunity or incentive to obtain a full and fair adjudication of the issue in the initial litigation. *Michelle T.,* 173 Wis. 2d at 688-89 (citing Restatement (Second) of Judgments § 28 (1980)). Some of these factors are decided as questions of law, e.g., factors 1, 2 and 4. *Paige K.B.,* 226 Wis. 2d at 223-24. Other factors require the circuit court to exercise its discretion, for example, factors 3 and 5. *Id.* at 225.

■

¶ 18. In this case, Mallery contends that Mrozek's guilty pleas fulfill the requirement that the issue of whether Mallery provided satisfactory legal advice for tasks relating to the construction and financing of the motel actually has been litigated. We have never squarely confronted the question whether issue preclusion may apply as a consequence of a guilty plea.[7] However, after reviewing a wide range of authorities, we conclude that issue preclusion is not available based on Mrozek's guilty pleas.

¶ 19. There is conflict among jurisdictions on the effect a guilty plea has on the availability of issue preclusion. The court of appeals relied on decisions from Iowa and Missouri in concluding that issue preclusion could apply following a guilty plea. *See James v. Paul,* 49 S.W.3d 678, 686–88 (Mo. 2001) (observing that jurisdictions "have split fairly evenly, the recent trend being to apply [issue preclusion] defensively in a civil proceeding following a plea of guilty"); *see also Ideal Mut. Ins. Co. v. Winker,* 319 N.W.2d 289, 294–96 (Iowa 1982). The reasoning behind this view is that before a guilty plea is accepted, the circuit court must ascertain

---

[7] We agree with Mallery that language in *Crowall v. Heritage Mutual Insurance Co.,* 118 Wis. 2d 120, 346 N.W.2d 327 (Ct. App. 1984), disallowing the use of issue preclusion following a guilty plea, is dicta and therefore not controlling. That decision held that issue preclusion can apply following a fully litigated criminal conviction, even if the parties in the subsequent action are not identical to the parties in the criminal case. *Id.* at 124. A footnote in that decision stated, "A· plea of guilty or nolo contendere in the criminal suit does not draw any issues into controversy and does not support the use of collateral estoppel." *Id.* at 122 n.2. We stated in *Michelle T. v. Crozier,* 173 Wis. 2d 681, 687 n.7, 495 N.W.2d 327 (1993), that the footnote in *Crowall* was dicta.

that there is a factual basis for the plea. *See, e.g., State v. Bangert,* 131 Wis. 2d 246, 266–67, 389 N.W.2d 12 (1986). Wisconsin statutes also require that a criminal court undertake this analysis. Wisconsin Stat. § 971.08(1) provides in part:

(1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

¶ 20. However, many states hold the opposite view, that a plea agreement is qualitatively different from a conviction following a trial. *See, e.g., Rawling v. City of New Haven,* 537 A.2d 439 (Conn. 1988); *Prudential Prop. & Cas. Ins. Co. v. Kollar,* 578 A.2d 1238, 1240–41 (N.J. Super. Ct. App. Div. 1990). These states are supported by the Restatement (Second) of Judgments § 85 cmt. b, which states:

b. Actual adjudication. The rule of this Section presupposes that the issue in question was actually litigated in the criminal prosecution. See § 27, Comment e. Accordingly, the rule of this Section does not apply where the criminal judgment was based on a plea of *nolo contendere* or a plea of guilty. A plea of *nolo contendere* by definition obviates actual adjudication and under prevailing interpretation is not an admission. A defendant who pleads guilty may be held to be estopped in subsequent civil litigation from contesting facts representing the elements of the offense. However, under the terms of this Restatement such an estoppel is not a matter of issue preclusion, because the

issue has not actually been litigated, but is a matter of the law of evidence beyond the scope of this Restatement.

Also, 18B C. Wright & A. Miller, *Federal Practice & Procedure,* § 4474.1 (3d ed. 2002) states:

> The desire to avoid a civil adjudication that is inconsistent with a plea-based conviction should not, in principle, go beyond use in evidence or judicial estoppel to reach issue preclusion. The conviction does not rest on actual adjudication or determination of any issue. Just as issue preclusion should not rest on civil judgments by consent, stipulation, or default, so it should not rest on a plea of guilty.

¶ 21. Ultimately, our determination depends not on the number of jurisdictions or authorities supporting a view, but rather on the persuasiveness of each position. We conclude that the following statement from the New Jersey Superior Court properly explains why applying issue preclusion should not be available based on a guilty plea:

> [A guilty plea] represents the decision of the defendant "to forego such litigation and usually for reasons having little or nothing to do with the nature of the issues." ... The motives for the State and a criminal defendant to make a plea agreement are many. The State may be seeking to conserve its scarce resources by avoiding a trial and a defendant may be attempting to secure his freedom or at least a reduced term of incarceration. Such reasons have little or nothing to do with the determination of the issues in the [later action].

*Kollar,* 578 A.2d at 1240–41. While a Wisconsin circuit court must make an inquiry sufficient to satisfy it that the defendant committed the crime before accepting the plea, such an inquiry is not the same as a fully litigated

467

trial between adversarial parties resulting in the fact-finder determining that the facts prove the defendant committed the crime. For example, a circuit court may satisfy its obligation of inquiry under Wis. Stat. § 971.08(1)(b) by incorporating by reference the facts adduced at the preliminary hearing. *State v. Duychak,* 133 Wis. 2d 307, 315, 395 N.W.2d 795 (Ct. App. 1986). Furthermore, a defendant who pleads guilty need not admit the facts of a crime that has been charged as a precondition to a court accepting his or her plea. *State v. Thomas,* 2000 WI 13, ¶ 18, 232 Wis. 2d 714, 605 N.W.2d 836. Therefore, we conclude that Mrozek's guilty pleas do not fulfill the "actually litigated" requirement for issue preclusion.

2. Judicial estoppel/public policy

¶ 22. Alternatively, Mallery urges us to conclude that Mrozek's negligence claim is barred by judicial estoppel or by public policy. "The equitable doctrine of judicial estoppel, as traditionally applied in this state, is intended 'to protect against a litigant playing 'fast and loose with the courts' by asserting inconsistent positions.' " *State v. Petty,* 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996) (citations omitted). Judicial estoppel precludes a party from asserting one position in a legal proceeding and then subsequently asserting an inconsistent position. *Id.* Judicial estoppel may be invoked where "(1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; and (3) the party to be estopped convinced the first court to adopt its position." *Riccitelli v. Broekhuizen,* 227 Wis. 2d 100, 111–12, 595 N.W.2d 392 (1999).

468

■

¶ 23. We decline to apply judicial estoppel here. It is not clear Mrozek is trying to "play fast and loose" with the judicial system; as we noted earlier, a criminal defendant has many potential reasons to enter into a plea agreement, some of which would not be inconsistent with alleging Mallery negligently represented Mrozek. For example, Mrozek may have pled to the charges in order to accept a lesser penalty than the maximum exposure she would have had if convicted after a trial.

■

¶ 24. Mallery also argues Mrozek's claims should be barred on public policy grounds because her convictions bring her within the doctrine of *in pari delicto,* under which doctrine it has been said that "no court will lend its aid to a man who founds his cause of action upon an immoral or illegal act." *Evans v. Cameron,* 121 Wis. 2d 421, 427, 360 N.W.2d 25 (1985) (citations omitted). In *Evans,* we upheld the dismissal of a complaint for the negligent provision of legal services, where the complainant committed perjury at a bankruptcy hearing, allegedly upon receiving advice from her attorney to do so. *Id.* at 424–25. We stated, "A court should not encourage others to commit illegal acts upon their lawyer's advice by allowing the perpetrators to believe that a suit against the attorney will allow them to obtain relief from any damage they might suffer if caught." *Id.* at 428.

¶ 25. We decline to bar Mrozek's malpractice claim under this doctrine. In *Evans,* the act of perjury was so clearly wrongful that even without the advice of attorneys, Evans would have understood her actions were illegal. *Id.* at 427–28. We also note that Mallery's position before the Securities Commissioner was that

Mrozek's actions were not illegal. Furthermore, as we explained in our discussion of guilty pleas and issue preclusion, *supra,* ¶ 21, her admission of guilt for plea agreement purposes is not conclusively determinative of the facts.

¶ 26. Because we decide that issue preclusion does not apply to a guilty plea and that neither judicial estoppel nor public policy bars a claim for the negligent provision of legal services, we conclude that the circuit court erred in granting summary judgment to Mallery.

## C. PMI's Claims

¶ 27. PMI contends that it suffered damages from its loss of ownership of the motel property and from its outlays for attorney's fees and costs in the bankruptcy and related matters. Mallery argues that claim preclusion applies to PMI's negligence claim against the firm because the trustee in PMI's bankruptcy could have pursued PMI's claim, but it did not. Mallery contends that the order closing the bankruptcy operates as a final judgment on PMI's claim.

¶ 28. Claim preclusion prevents relitigation of the same claim when: (1) there is an identity of parties or their privies in the prior lawsuit; (2) there is an identity of claims for relief that were brought, or should have been brought; and (3) a final judgment on the merits in a court of competent jurisdiction resolved the first lawsuit. *Kruckenberg v. Harvey,* 2005 WI 43, ¶ 21, 279 Wis. 2d 520, 694 N.W.2d 879; *Northern States Power,* 189 Wis. 2d at 551. Claim preclusion is " 'designed to draw a line between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other hand.' " *Northern States Power,* 189 Wis. 2d

at 550 (quoting *Purter v. Heckler,* 771 F.2d 682, 689–90 (3d Cir. 1985)). Key objectives of the doctrine of claim preclusion are to promote judicial economy and to "conserve the resources the parties would expend in repeated and needless litigation of issues that were, or that might have been resolved in a single prior action." *Hanlon v. Town of Milton,* 2000 WI 61, ¶ 20, 235 Wis. 2d 597, 612 N.W.2d 44 (citation omitted). At some point, litigation over a controversy must come to an end. *DePratt v. West Bend Mut. Ins. Co.,* 113 Wis. 2d 306, 311, 334 N.W.2d 883 (1983).

¶ 29. Mallery's major argument for the application of claim preclusion centers on the third prong of the claim preclusion. It contends that because PMI's negligence claim was a "core proceeding" in the bankruptcy, the bankruptcy court's judgment closing the bankruptcy estate was a final judgment on the merits in a court of competent jurisdiction. Mallery also contends that even if PMI's claim was not a core proceeding, claim preclusion applies. PMI contends that its negligence claim against Mallery was not a core proceeding and even if it were, the claim was abandoned by the trustee in bankruptcy, which caused it to revert to PMI.

¶ 30. Bankruptcy courts have full judicial authority over the bankruptcy petition itself and may "hear and determine . . . all core proceedings . . . and may enter appropriate orders and judgments" with regard to core proceedings. 28 U.S.C. § 157(b)(1) (2002);[8] *see also Dunmore v. United States,* 358 F.3d 1107, 1114 (9th Cir. 2004). They also have the limited power to "hear a proceeding that [is related to the bankruptcy but] is not

---

[8] All further references to the United States Code are to the 2002 version unless otherwise noted.

a core proceeding [and] submit proposed findings of fact and conclusions of law to the district court" for de novo review. 28 U.S.C. § 157(c)(1); *see also Dunmore*, 358 F.3d at 1114. However, unless the parties consent to an expansion of the bankruptcy court's authority, it is the district court that enters the final order and judgment in non-core proceedings. *Id.* The United States Code provides a non-exclusive list of what constitutes a core proceeding.[9]

¶ 31. In this case, we need not decide whether PMI's claim is core because we conclude that PMI is correct in its contention that the bankruptcy trustee abandoned PMI's claim against Mallery for the negligent provision of legal services. 11 U.S.C. § 554 provides the statutory basis for abandonment of property by a bankruptcy trustee. It states in relevant part:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

[9] 28 U.S.C. 157(b)(2) provides in relevant part:

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 [11 USCS §§ 1101 et seq., 1201 et seq. or 1301 et seq.] but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11 [11 USCS §§ 101 et seq.];

(C) counterclaims by the estate against persons filing claims against the estate.

. . .

> (c) Unless the court orders otherwise, any property scheduled under section 521(l) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor . . . .

As the United States Court of Appeals for the Seventh Circuit has recently explained:

> The Bankruptcy Code provides that "after notice and a hearing," the trustee, either on his own volition or under order by the bankruptcy court, "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). In addition, property that the bankruptcy court orders the trustee to abandon is deemed abandoned, § 554(b), and likewise property that has been scheduled, § 521(l), but "not otherwise administered at the time of the closing of a case." § 554(c).

*Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir. 2002). *Morlan* explains the requirements for abandonment of a claim as: (1) notice and hearing; (2) property of the estate that is burdensome to the estate or is of inconsequential value or benefit to the estate; (3) property that has been scheduled; but (4) not otherwise administered at the time of closing of the bankruptcy estate. *Id.* at 618. PMI's claim against Mrozek meets these parameters.

¶ 32. On March 27, 1996, PMI's bankruptcy trustee, Randi L. Osberg, gave notice in a report filed with the court that there were "no assets in the estate" that were not "either inconsequential in value or burdensome to the estate." Trustee Osberg stated further, "This report shall be considered as an abandonment of all scheduled property of the bankruptcy estate." PMI's

claim against Mallery was "scheduled" in the estate, as PMI had listed it as a claim in its filings with an "unknown" value, but the trustee had not administered it. 11 U.S.C. § 554(l). On November 26, 1996, a final decree was entered that concluded PMI's bankruptcy action.

¶ 33. When a bankruptcy trustee abandons a scheduled claim, it reverts to the debtor, as PMI's claim did under 11 U.S.C. § 554(c). As the United States Court of Appeals for the Tenth Circuit recently explained: "Property abandoned under [§ 554] ceases to be part of the estate. . . . It reverts to the debtor and stands as if no bankruptcy petition was filed." *Dewsnup v. Timm,* 908 F.2d 588, 590 (10th Cir. 1990) (citing *Brown v. O'Keefe,* 300 U.S. 598, 602 (1937)). "Following abandonment, 'whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right.' " *Dewsnup,* 908 F.2d at 590 (citation omitted). This is also the view of the Seventh Circuit, which has explained, "the effect of a trustee's abandoning a claim is to revest the ownership of it in the debtor." *Morlan,* 298 F.3d at 617 (citing *Koch Refining v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1346 n.9 (7th Cir. 1987)); *Catalano v. Commissioner,* 279 F.3d 682, 685 (9th Cir. 2002); *Miller v. Generale Bank Nederland, N.V.,* 217 F.3d 74, 76 (2d Cir. 2000).

¶ 34. The court of appeals did not accord merit to PMI's abandonment argument. It reasoned that the cases cited by PMI, *Roberts v. Pearce Construction Co.,* 624 So. 2d 1009 (Ala. 1993) and *Barletta v. Tedeschi,* 121 B.R. 669 (N.D.N.Y. 1990), were standing cases, and therefore unsupportive of PMI's abandonment argument. The court of appeals relied heavily on *Bank of*

*Lafayette v. Baudoin,* 981 F.2d 736 (5th Cir. 1993). We conclude its reliance is misplaced.

■■■

¶ 35. Abandonment did not occur in *Baudoin.* First, according to the opinion, the claim at issue was never "scheduled" in the bankruptcy. *Baudoin,* 981 F.2d at 739 n.4. The court reasoned:

> [W]e do not consider the Baudoins' earlier mentioned, vague reference to 'Any possible claim against creditor for actions taken against debtors prior to bankruptcy proceeding' in their schedule of assets a sufficient scheduling of their claim against the Bank . . . .

*Id.* If a claim has not been scheduled under 11 U.S.C. 521(1) in the bankruptcy, it cannot meet the criteria that 11 U.S.C. 554(c) requires as a precondition for abandonment. *Morlan,* 298 F.3d at 618. Second, the trustee did not give notice of intent to abandon the claim. *Baudoin,* 981 F.2d at 739 n.4. The court reasoned, "[a] professed intent [by the trustee] to abandon cannot constitute abandonment, as 11 U.S.C. § 554(a) requires notice and a hearing prior to abandonment." *Id.*

¶ 36. The court of appeals in the case before us also relied on *Sure-Snap Corp. v. State Street Bank & Trust Co.,* 948 F.2d 869 (2d Cir. 1991), for its conclusion that claim preclusion bars PMI's negligence claim against Mallery. *Sure-Snap* was a Chapter 11 proceeding wherein the debtor filed objections to the banks' proofs of claim. *Id.* at 871. The validity of the banks' liens was litigated and upheld in the bankruptcy proceeding and on appeal to the district court. *Id.* When the final bankruptcy hearing was held in Sure-Snap's bankruptcy, "no pending claims [were] alleged against the banks." *Id.* Almost one year after the debtor's plan

of reorganization was confirmed by the bankruptcy court, Sure-Snap brought lender liability claims against the banks. *Id.* at 872. The court concluded that the lender liability claims were the same cause of action that had already been litigated in bankruptcy court when Sure-Snap objected to the validity of the banks' liens, and it applied claim preclusion dismissing the action. *Id.* Aside from the significant differences in a Chapter 11 proceeding, where the debtor is in possession of the assets during the bankruptcy and subsequent reorganization, and a Chapter 7 proceeding, where an independent trustee is named to serve the bankruptcy estate, *Sure-Snap* is a garden variety claim preclusion case. Sure-Snap litigated its claims against the banks once, and it had no right to do so again in a different forum. *DePratt,* 113 Wis. 2d at 311. PMI has never litigated its claim against Mallery.

¶ 37. We conclude that *Morlan* and *Dewsnup* provide the better reasoned view of the effect that a trustee's abandonment of property has on a Chapter 7 debtor's ability to proceed on a scheduled claim that has not been subject to administration. An abandoned claim "reverts to the debtor and stands as if no bankruptcy petition was filed." *Dewsnup,* 908 F.2d at 590; *see also Mundell v. Mundell,* 858 So. 2d 768, 771–72 (La. Ct. App. 2003) (concluding that claims that were abandoned by the trustee in bankruptcy could not form the basis for claim preclusion). Accordingly, we conclude that the order closing the bankruptcy proceeding did not operate as a final judgment on PMI's claim. Therefore, claim preclusion is not applicable to its claim against Mallery for the negligent provision of legal services, and the circuit court erred in granting summary judgment against PMI on this basis.

## D. Joint Claims

¶ 38. Finally, PMI and Mrozek argue that Mallery's negligence resulted in lost profits for PMI and rendered Mrozek's contract to manage the AmericInn worthless because her compensation was based on the profitability of PMI. The court of appeals summarized the plaintiffs' burden in proving damages for lost profits:

> Damages for lost profits need not be proven with absolute certainty, but the claimant must produce sufficient evidence ... on which to base a reasonable inference as to a damage amount. To establish lost profits, the claimant must produce evidence of the business's revenue as well as its expenses. Assertions as to the amount of lost profits have no evidentiary value unless supported by figures showing profits and losses.

*Lindevig v. Dairy Equip. Co.*, 150 Wis. 2d 731, 740, 442 N.W.2d 504 (Ct. App. 1989) (citations omitted). In situations like this, where a new business has no previous profit history, the court of appeals has provided further guidance on how lost profits may be recovered, stating that the party seeking lost profits must "present credible comparable evidence or business history and business experience sufficient to allow a fact finder to reasonably ascertain future lost profits." *T & HW Enters. v. Kenosha Assocs.*, 206 Wis. 2d 591, 605 n.6, 557 N.W.2d 480 (Ct. App. 1996).

¶ 39. PMI and Mrozek argue that at trial they would have produced numerous sources of information showing a basis for ascertaining lost profits, including the AmericInn franchise license agreement offering assistance in operating the motel and representing that

the franchise would be profitable; the "forecasted statement of operations and pre-tax cash flow" prepared by CPAs and included in the stock offering documents prepared by Mallery; a 1992 appraisal of the PMI property; deposition testimony establishing that the area surrounding the motel has been developed, having a positive effect on the motel's profitability; and five years of tax returns from the entity that ultimately purchased the property and operated the motel.

¶ 40. Notwithstanding the above recitation, the information presented is not sufficient for a fact finder to reasonably ascertain lost profits. The franchise license agreement does not provide any specific profit projections for the motel and in fact disclaims such projections:

> The LICENSOR expressly disclaims the making of . . . any estimates, projections, warranties or guaranties, express or implied, regarding the potential Gross Revenues, profits, earnings or financial success of the LICENSEE'S AmericInn® Motel, except as may be set forth in the LICENSOR'S Uniform Franchise Offering Circular, a copy of which has been received by the LICENSEE.[10]

The forecast statement prepared by CPAs likewise included a disclaimer, stating:

> [The forecast statement] is limited to presenting in the form of a forecast information that is the representation of management and does not include evaluation of the support for the assumptions underlying the forecast. We have not examined the forecast and, accordingly, do not express an opinion or any other form of assurance on the accompanying statements or as-

---

[10] The document referred to as the "Uniform Franchise Offering Circular" is not included in the record.

> sumptions. Furthermore, there will usually be differences between the forecasted and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material.

The 1992 appraisal contains a valuation based on the income capitalization approach, but states that "[t]he income, expenses and conversion rates estimated in this analysis are unknown variables which will occur in the future. ... [B]ecause the real estate market is constantly changing, no warranty or representation is made that these projections will occur as estimated in this report." Therefore, any income or expense projections in these documents are purely speculative.

¶ 41. Although Mrozek claims she would produce deposition testimony establishing that the area surrounding the motel had been developed, there is no evidence of this in the record, and a court considering a motion for summary judgment cannot rely on mere allegations in the pleadings, but must examine the facts of record. *See Moulas v. PBC Prods., Inc.,* 213 Wis. 2d 406, 410–11, 570 N.W.2d 739 (Ct. App. 1997), *aff'd,* 217 Wis. 2d 449, 576 N.W.2d 929 (1998). Furthermore, even if this information about the surrounding area had been supplied, it would not allow us to reasonably ascertain the profitability of a particular establishment within that area.

¶ 42. The last documents Mrozek points us to, the tax returns of the entity that eventually operated the motel, contain the type of information that may be useful in making a determination of lost profits. The returns show that the new owner began to show positive ordinary income in 1997, year three of operation,

and averaged roughly $31,000 in ordinary income through the six-year period. Looking at this data, the circuit court stated:

> I think that . . . the income history of the corporation that's actually functioning there is relevant information and would be admissible as to profit projections for the proposed PMI, Plover Motel, Incorporated.
>
> What I don't believe is here, however, is the opposite side of the ledger and that is evidence that would detail the proposed expenses of this operation. Certainly the purchase price for the operating business that's at that location now and the purchase price for the Plover Motel, Incorporated were different and the capitalization of those two operations, how much debt they incurred, what the interest rates were on the debt that was incurred are, I would assume, different . . . .
>
> And the projection of profit can't be accomplished without a correlation between the expense portion of the ledger and the projections on income . . . .
>
> So lacking that, I don't believe there is evidence in the record that's sufficient to support the judgment in terms of projected profit of the corporation and, therefore, management expenses to be paid to [Mrozek] . . . .

We agree with the circuit court's analysis. Given that we must look to figures showing profits and losses in order to ascertain damages, PMI's failure to provide evidence of expenses relating to a business owner in its position results in PMI's failing to meet its burden. *See Lindevig,* 150 Wis. 2d at 740. The evidence we are left with on the summary judgment record makes a determination of PMI's lost profits speculative. It also follows that if PMI has demonstrated no profits, Mrozek's contract that required profitability before she received payments under it has no value. Accordingly, we con-

clude the circuit court correctly granted summary judgment on PMI's and Mrozek's claims relating to lost profits.

### III. CONCLUSION

¶ 43. We conclude that the circuit court correctly granted summary judgment dismissing the claim of PMI for lost profits, as well as Mrozek's claim for lost management fees that was dependent on PMI's claim for lost profits. However, we conclude that it was error to dismiss Mrozek's and PMI's other claims. Accordingly, we affirm in part, reverse in part and remand to the circuit court for further proceedings on Mrozek's and PMI's remaining claims based on the allegedly negligent provision of legal services.

*By the Court.*—The decision of the court of appeals is affirmed in part; reversed in part and cause remanded.

¶ 44. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). There is one remaining issue presented by this case that the majority chose not to address because it was not briefed by the parties. That is whether an appellate court can apply issue preclusion when the circuit court has not considered the question. I write in concurrence to bring this issue to the attention of the courts and the litigants because I have concluded that the court of appeals erred in doing so here.

¶ 45. In the usual course of an appeal involving issue preclusion, the task of an appellate court is solely to review the decision of a circuit court that either chose to apply issue preclusion or did not so choose. However, that is not what happened in this case. Here, the appellate court applied issue preclusion when the ques-

481

tion had never been presented to or decided by the circuit court, nor had any party argued to the court of appeals that it should be applied.

¶ 46. In my view, issue preclusion cannot be applied in the first instance by an appellate court because it cannot be applied as a matter of law, but only as a discretionary determination made after a fairness analysis. *Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210, 225, 594 N.W.2d 370 (1999). For example, in exercising its discretion as to whether to apply issue preclusion, the circuit court considers: (1) whether there are apt to be significant differences in the quality or extensiveness of the two proceedings such that re-litigation of the issue is warranted and (2) whether matters of public policy or individual circumstances would render the application of issue prelusion fundamentally unfair, including whether the party against whom preclusion is sought had an inadequate opportunity or incentive to obtain a full and fair adjudication of the issue in the initial litigation. *Michelle T. v. Crozier*, 173 Wis. 2d 681, 689, 495 N.W.2d 327 (1993).

¶ 47. There is no one, right answer to these inquiries, but rather, the decision about whether to apply issue preclusion involves the exercise of discretion based on facts developed in the circuit court. *Ambrose v. Continental Ins. Co.*, 208 Wis. 2d 346, 355–56, 560 N.W.2d 309 (Ct. App. 1997). Discretionary decision making of this type is not the task of an appellate court where no circuit court record relative to the issue has been developed. An appellate court is to review a circuit court's exercise of discretion, not exercise discretion without the benefit of either a circuit court decision or circuit court record developed in response to a party's assertion that issue preclusion should be applied. Therefore, although it is possible for an appellate court

to conclude that issue preclusion is not available as a matter of law, as we have here, because the same issue was not actually litigated in the prior proceeding, *see id.* at 356, it is not appropriate for the court of appeals to apply issue preclusion as the initial decision maker. That is beyond the scope of an appellate court's authority.

¶ 48. Accordingly, I conclude that the court of appeals erred in applying issue preclusion to Mrozek's claims and because this question requires examination, I respectfully concur in the majority opinion.